The Rudolph Wurlitzer Company v. Commissioner.
Rudolph Wurlitzer Co. v. Commissioner
Docket No. 109279.
United States Tax Court
1943 Tax Ct. Memo LEXIS 248; 2 T.C.M. (CCH) 276; T.C.M. (RIA) 43288; June 17, 1943
*248 Elden McFarland, Esq., 618 Southern Bldg., Washington, D.C., for the petitioner. John D. Kiley, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined a deficiency in income tax of petitioner of $11,111.30 for the fiscal year ending March 31, 1939. In doing so he made a number of adjustments in petitioner's reported income but the correctness of only one of these is in dispute. Petitioner here contends that in determining its base for depreciation of assets, excessive depreciation, taken thereon in prior years in which net losses were sustained and no tax benefit resulted, should be restored. Findings of Fact The petitioner is an Ohio corporation with its principal office in Chicago. Its books are kept on an accrual basis of accounting, with a fiscal year ending on March 31. Its returns for the taxable year 1939 were filed with the collector of internal revenue for the First District of Ohio. The case was submitted on testimony, exhibits, and a stipulation of facts. Portions of the stipulation which are not hereinafter set out are included by reference. The petitioner owned, directly or indirectly, all the outstanding capital *249 stock of the Rudolph Wurlitzer Manufacturing Company (hereinafter called "North Tonawanda") since prior to the end of its 1928 fiscal year. It also owned more than 50 but less than 95 per cent of the voting stock of the Wurlitzer Grand Piano Company (hereinafter called "DeKalb") during its 1928 fiscal year and until December 14, 1930 when it acquired, directly or indirectly, all the remaining voting stock of the company. These two corporations also kept their books on the accrual basis and had fiscal years ending on March 31. The petitioner filed consolidated income tax returns for the fiscal years 1928 through 1934 in which the operations of North Tonawanda and DeKalb were included. The Commissioner determined, subsequent to the filing of returns for 1929, 1930 and 1931, that DeKalb was not affiliated with petitioner for the period from April 1, 1928 to December 14, 1930. He therefore ordered that the operations of DeKalb for that period be removed from the consolidated returns. This adjustment was made. The petitioner filed separate returns for the fiscal years 1935 through 1939. North Tonawanda and DeKalb filed separate returns for the fiscal years 1935 and 1936, and for the *250 period from April 1 to September 30 in their 1937 fiscal years when these corporations were liquidated according to a plan. The liquidation was accomplished by the transfer on September 30, 1936 by DeKalb and North Tonawanda of their assets and liabilities to the Western Industries Corporation, another subsidiary of petitioner, in exchange for their stock which that corporation held. On October 2, 1936, the Western Industries Corporation transferred its assets and liabilities, including those received from DeKalb and North Tonawanda, to petitioner in exchange for its stock which the latter held. The DeKalb, North Tonawanda and Western Industries corporations were then dissolved. The assets of DeKalb and North Tonawanda were placed on petitioner's books at the same amounts at which they were carried on the books of those two corporations before their liquidation. After the liquidation, DeKalb and North Tonawanda were operated as divisions of petitioner. The general policy of the petitioner toward its own property and that of its subsidiaries was to keep them in a good state of repair at all times. The petitioner was prevented, however, by its banks to whom it was indebted, from making *251 extensive repairs or additions during its fiscal years from 1930 through 1935. The DeKalb factory is located in DeKalb, Illinois. Pianos were the principal products manufactured by it during all times here material. DeKalb's operations during the fiscal years 1930 through 1935 were comparatively light but greatly increased from 1936 through 1939. This was largely due to the demand for a small upright piano called a "Spinet" which DeKalb had begun to manufacture. During the latter period the speed of production was increased and the hours of operation were lengthened by a second shift. The increased production caused the division to employ a large number of inexperienced workers. The following table contains the additions to machinery, repairs, and net sales made at DeKalb during the fiscal years 1930-1939: Years
Additions
ended
to
March 31
Machinery
Repairs
Net Sales
1930
$ 6,015.01
$ 768,109.65
1931
120.00
2,973.19
721,442.41
1932
1,488.50
3,932.10
650,620.58
1933
196.95
3,086.54
492,543.94
1934
478.51
3,743.88
682,677.41
1935
1,939.70
2,419.78
749,128.53
1936
4,454.48
4,319.23
1,033,343.25
1937
23,082.97
10,932.88
1,723,607.15
1938
63,452.27
12,030.06
2,105,342.22
1939
20,529.58
8,612.93
1,788,979.36
*252 The increased purchase of machinery in 1937 through 1939 was due to the demands of increased production, to the wearing out of some old machinery at that time, and to the introduction of some new improved machinery. However, over 50 per cent of the machinery used in the plant during the fiscal year 1939 was also in use during the period from 1930 through 1935. The North Tonawanda factory is located in North Tonawanda, New York. This division manufactured radios, organs, pianos, and home furnishings during the fiscal years 1930 through 1934. During the latter year, it also began to manufacture coin operated automatic phonographs. The manufacture of radios and home furnishings was dropped by 1937. The manufacture of pianos was transferred to the DeKalb division in 1939. North Tonawanda continued to manufacture organs when orders for them were received. However, this was only a small item of business. The demand for the automatic phonographs increased after 1935. The demand for its other products was decreasing in the meantime. This, however, did not cause many alterations at the plant because all the machines except one type were adaptable, with slight adjustments, to the manufacture *253 of the phonographs. During the fiscal years 1936 through 1939, the production and total sales of products of North Tonawanda increased greatly over those of former years. This caused the plant to employ a large number of additional employees who were inexperienced in the use of machines. The factory building of North Tonawanda had been increased by additional sections from time to time as the operations of the plant increased. It was built mostly of brick, and was maintained in good condition at all times. It was used to a greater extent during the fiscal years from 1936 through 1939 than in former years due to increased production, but no more in 1939 than during 1937 and 1938. The following table contains the sales, the repairs to the buildings, and to the machinery and the equipment, and the average number of employees at North Tonawanda in each of the fiscal years 1930 through 1939: Repairs to
Years
Machinery
Average
Ending
Repairs to
and
Number of
March 31
Sales
Buildings
Equipment
Employees
1930
$ 1,966,528.70
$ 4,701.00
$ 863.05
682
1931
2,596,050.30
1,550.57
4,790.12
837
1932
1,630,339.25
624
1933
1,377,536.53
127.28
1,370.07
480
1934
2,088,201.74
958.53
2,979.10
738
1935
1,962,332.23
1,595.08
4,779.51
471
1936
5,586,001.05
8,733.09
45,168.72
857
1937
11,636,103.79
17,042.55
65,175.10
1,464
1938
11,392,657.67
11,923.25
60,800.04
1,512
1939
8,300,247.69
19,191.00
35,134.28
1,215
*254 The expenditures for repairs to buildings, machinery and equipment in the fiscal year 1932 were charged to general maintenance and were not broken down into separate accounts. The expenditures for repairs for those items in that year were not more than those amounts spent in the preceding years. The Cincinnati division of petitioner owned retail stores in Cincinnati, Ohio, in Detroit, Michigan, and in Dayton, Ohio. The stores contained furniture and fixtures such as show counters and cases for merchandise. The stores and their equipment were at all times kept in good repair. This was necessary in order to make a good impression on the public and to satisfy the insurance underwriters. The store buildings at Cincinnati, Ohio and Detroit, Michigan, were constructed of brick and the one at Dayton was constructed of brick and concrete. A portion of the store building in Detroit was leased to tenants. The Detroit building had elevators, heating equipment, and electric wiring and fixtures. The following additions to furniture and fixtures were made to the property in Cincinnati during the fiscal years 1930 through 1939: Year ended March 31
Amount
1930
$23,787.14
1931
5,206.87
1932
1,135.40
1933
2,223.50
1934
656.84
1935
1,644.27
1936
12,553.08
1937
11,480.95
1938
64,295.89
1939
13,524.64
*255 These buildings and equipment were not being subjected to greater wear and tear in the fiscal year 1939 than during the period from 1930 through 1938. The consolidated returns filed by petitioner for the fiscal years 1930 through 1934 included its own operations, those of DeKalb and North Tonawanda, and several of its other subsidiaries. These returns, after the operations of DeKalb were removed for those periods when respondent determined it was not affiliated, showed net losses as follows: Year Ending March 31
Loss
1930
$ 271,197.59 [1] *256 1931
375,661.13
1932
1,355,730.73
1933
867,086.09
1934
1.193,961.93
The petitioner, on its return for the taxable year, deducted depreciation at the same rates that it had used in former years. The respondent determined that certain of these depreciated assets in the DeKalb, North Tonawanda and Cincinnati divisions had a longer life than the rates of depreciation used by petitioner would justify. These assets included certain types of machinery and equipment at the DeKalb and North Tonawanda plants and the factory building of the latter. They also included certain buildings and fixtures of the Cincinnati division. The respondent took the depreciated bases as at the end of the prior taxable year and deducted depreciation for the taxable year at rates based on the longer life of those assets which he had determined. The allowance for depreciation was thus reduced which resulted in the contested deficiency. Opinion The petitioner does not question respondent's adjustments in the rates of depreciation taken on its assets in the taxable *257 year. It contends, however, that all the depreciating assets upon which the contested adjustments are based had the same life in earlier years and that the depreciation then was no greater than that during the taxable year. Thus, it argues, it took deductions of excessive depreciation in those earlier years and, in those years in which it suffered losses, the excessive amounts should be restored to the undepreciated base in the taxable year. Petitioner is concluded by the recent decision by the Supreme Court in Virginian Hotel Corporation of Lynchburg v. Helvering, 319 U.S., holding that excessive depreciation deducted on returns in prior years may not be restored, even though it did not serve to reduce taxable income in those years. Decision will be entered for the respondent. Footnotes
1. Includes net loss carry-over from a prior year of $20,562.82. The petitioner, individually, and the DeKalb and North Tonawanda divisions had net profits and losses for the fiscal years 1930 through 1938, after adjustments by the respondent, as follows:
Year Ended March 31
Petitioner
DeKalb
North Tonawanda
1930
$ 145,390.97
$ 64,794.57
$ 222,761.88 Loss. *
1931
18,880.34 *
70,856.15
188,519.96 *
1932
614,968.67 *
13,056.32
640,511.84 *
1933
577,227.42 *
2,641.35
255,360.54 *
1934
994,405.75 *
139,651.47
265,834.88 *
1935
354,421.81 *
55,663.30
41,301.74 *
1936
281,290.21 *
52,370.94
838,205.92
1937
1,765,317.51 The petitioner did not have normal tax net income for the fiscal year 1937 after the deduction from net income of a dividends received credit of $2,044,483.75.
***
8,955.34 Liquidated on September 30, 1936. **↩
2,401,773.34 **
1938
395,794.00